**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | | |
|---|---|---|
| BILLY KIRBY | * | |
| ADC #661406, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | No. 4:22-cv-01263-JJV |
| | * | |
| JOE PAGE, Warden, | * | |
| Pine Bluff Unit, ADC | * | |
| | * | |
| Defendant. | * | |

<u>**MEMORANDUM AND ORDER**</u>

**I.      INTRODUCTION**

Billy Kirby is a prisoner in the Pine Bluff Unit of the Arkansas Division of Correction ("ADC").   He has filed this *pro se* action, pursuant to 42 U.S.C. § 1983, alleging Defendant Warden Joe Page subjected him to inhumane conditions of confinement by ordering the lights in his barrack to stay on from 2:30 a.m. to 10:30 p.m., thereby causing him to suffer from sleep deprivation.   (Doc. 6.)   All other claims have been previously dismissed without prejudice. (Doc. 9.)   And the parties have consented to proceed before me.   (Doc. 15.)

Defendant has filed a Motion for Summary Judgment arguing the case should be dismissed without prejudice because Plaintiff failed to properly exhaust his available administrative remedies.   (Docs. 16-18.)   Plaintiff has filed a Response and a Motion for Leave to File an Amended Complaint.   (Docs. 19, 24.)   After careful consideration and for the following reasons, Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's claim against Defendant Page is DISMISSED without prejudice, Plaintiff's Motion for Leave to File an Amended Complaint is DENIED as moot, and this case is CLOSED.

1

## II.       SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.    Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).    When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.    *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).    The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.    *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).    The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.    *Id.* (citations omitted).    A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.    *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).    Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.    *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.      DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.       The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."    42 U.S.C. § 1997e(a).    The purposes of the exhaustion

requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court.   *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).   Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."   *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility.   *Id.*

### B.    ADC's Grievance Policy

The ADC policy in effect at the time of the alleged constitutional violation was Administrative Directive 19-34, which establishes a three-step procedure.   (Docs. 16-1, 16-2.) First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident.   The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses and how the policy or incident affected the inmate submitting the form."   (*Id*. § IV(E)(2).)   Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties."   (*Id*. § IV(C)(4).)   And the grievance form itself reminds prisoners to include the "name of personnel

3

involved." (*Id*. at 20.)   The problem solver must respond to the informal resolution within three working days.   (*Id*. § IV(C)(4) and (7).)

Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance with the Warden on the same Unit Level Grievance Form within three working days.   (*Id.* § IV(E)(11) and (F)(5)(7).)   The Warden must provide a written response within twenty working days.   (*Id*. § IV(F)(7).)

Third, an inmate who is dissatisfied with the Warden's response or does not timely receive one, must appeal within five working days to the ADC Assistant Director.   (*Id*. § IV(F)(8) and (G)(6).)   The ADC Assistant Director must provide a written response within thirty working days. A decision or rejection of an appeal at this level is the end of the grievance process.   (*Id*.) Finally, the Directive includes the following warning:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit or Claims Commission claim.   If this is not done, the lawsuit or claim may be summarily dismissed.

(*Id*. at § IV(N).)

### C.   Plaintiff's Grievances

The ADC Assistant Inmate Grievance Coordinator says in her sworn declaration that PB-22-332 is the only grievance Plaintiff filed about the limited time the lights were off in his barrack. (Doc. 16-1.)   And Plaintiff agrees.   (Doc. 24.)

In PB-22-332, Plaintiff said:

> On 12-15-22 at approx. 2:37 am for some unknown reason L.T. Desmuke cut lights on and won't turn them off. The Rules on page II 5 section C states the lights don't come on until 6 am on weekdays and 8 am on weekends plus this is a working brks.

(Doc. 1 at 5; Doc. 16-4 at 1.)   Defendant Page denied that grievance for the following reason:

According to Arkansas Department of Correction (ADC), Pine Bluff Complex, Post Orders for 10 Barracks, which is your housing area, the lights are to be turned on at breakfast call and remain on until 10:30 p.m., Monday – Friday. Lights will be turned on at 8:00 a.m. Saturday and Sunday mornings. Lt. M. Dismute is following ADC policy, accordingly. Therefore, I find no merit to your complaint.

(*Id*. at 5.)    In his appeal, Plaintiff wrote:

The <u>Warden Joe Page's</u> response did not fix the problem that has occurred in the past or the current new post orders (post order #15 for 10 barracks).    The <u>Warden Joe Page</u> said that the lights don't come on until 6 am M-F, and 8 am on weekends. Yet, the post orders told the officers on post to continue having the lights on until 10:30 pm according to breakfast on – as stated in the post orders.    But our breakfast is not at 6 am on.    Our breakfast times range from 2 am – 4 am approx., which is prior to the 6 am and 8 am lights on post order regulation for the Pine Bluff Unit according to Pine Bluff's own superintendent <u>Joe Page</u>.    For a short time the post order was changed to keep off the lights for approx. a 2 week period, but the post orders have rechanged to keep the lights on from breakfast time until 10:30 pm again.    I have been previously sleep deprived and suffered mental health issues as a result of it and have seen the mental health provider over this situation. Now its still in the post orders yet again.

(*Id*.) (emphasis added.)    In his final ruling, the ADC Deputy Director said:

Your appeal was received 1/13/23.    I have reviewed your appeal, as well as the Warden's response and I concur with the Warden's decision.    I find no evidence where staff is not abiding by policy and procedures, therefore, I find no merit to your appeal.

(*Id*. at 6.)

Defendant Page says there is improper exhaustion because Plaintiff did not specifically name him in the initial grievance, as he was required to do by the ADC's exhaustion policy. While that may be an accurate description of the initial grievance, I find the argument incomplete because Plaintiff specifically named Defendant Page in his appeal.    While the ADC Deputy Director could have rejected the appeal as improper for adding a new claim against the Warden, he did not do so.    Instead, the ADC Deputy Director by-passed that procedural flaw and ruled, on the merits, that the Warden and staff were properly complying with policy and procedures by allowing the lights to be turned on at 2 am, or whenever breakfast was served on the weekdays,

and off at 10:30 pm.   As explained by the Eighth Circuit, "the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits."   *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).   Importantly, I find the facts here distinguishable from *Champion v. Akins*, No. 12-2467, 2013 WL 656797, at * (8th Cir. Feb. 25, 2013), where the Eighth Circuit held that merely mentioning an individual as a reader of a grievance is not sufficient to properly exhaust administrative remedies against that individual.   In contrast to *Champion*, Plaintiff was not naming Warden Page simply as the reader of his grievance.   Instead, Plaintiff said on appeal that Warden Page was personally involved in the grieved incident by allowing ADC officers to turn on the lights whenever breakfast was called, even if that was at 2:00 a.m., instead of 6:00 a.m.

Defendant Page also argues PB-22-332 is improper exhaustion because Plaintiff did not obtain a final ruling on it before he commenced this lawsuit.   I agree.   "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies <u>before</u> filing suit in federal court."   *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in the original).   Dismissal is mandatory if "exhaustion was not completed at the time of filing."   *Id.; see also Booth v. Churner,* 532 U.S. 731, 734 (2001) (the PLRA requires prisoners to complete exhaustion "before suing over prison conditions"); *Harris v. Kemna*, No. 05-2746, 2005 WL 3159569 (8th Cir. Nov. 29. 2005) (unpublished opinion) (affirming dismissal when exhaustion was not complete at the time of filing).   And, the ADC's grievance policy reminds prisoners they must fully exhaust administrative remedies "at all levels of the grievance procedure before filing a Section 1983 lawsuit."   (Doc. 16-2 at 19.)

As argued in his Response, Plaintiff is correct that he completed all three steps of the ADC's grievance procedure.   But, the problem here is that Plaintiff completed the last step on

January 20, 2023, which was <u>after</u> he commenced this lawsuit on December 20, 2022.   (Doc. 2; Doc. 16-4 at 6.)   Although Plaintiff filed his Amended Complaint (Doc. 6) after he completed the exhaustion process, the relevant date is when the lawsuit was "commenced," and not when the complaint was subsequently amended.   *See, e.g., Tyler v. Kelley*, No. 5:17-cv-00239-JLH-JTK, 2018 WL 1528784, at *3 (E.D. Ark. Mar. 2, 2018) (grievance exhausted after the lawsuit was commenced but before amended complaint was filed was not proper exhaustion); *Kelley v. Davis*, No. 2:22-cv-0034-DPM-ERE, 2022 WL 18359331, at n. 8 (E.D. Ark. Aug. 18, 2022) (same); *Abdulaziz/Askew v. Maples*, No. 1:12-cv-102-DPM-JTK, 2013 WL 6579151, at *5 (E.D. Ark. Dec. 13, 2013) (same).   Thus, I conclude Plaintiff did not properly exhaust his administrative remedies before filing this lawsuit.   *See Woodford*, 548 U.S. at 90 (proper administrative exhaustion "means using all steps that the agency holds out and doing so properly so that the agency addresses the issues on the merits").

However, that is not the end of the analysis because the PLRA only requires prisoners to exhaust their "available" administrative remedies.   42 U.S.C. § 1997e(a).   Administrative remedies are "available" if they are "capable of use for the accomplishment of a purpose."   *Ross v. Blake,* 578 U.S. 632, 642 (2016).   In contrast, administrative remedies are "unavailable" if: (1) the administrative process "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) the administrative process is "so opaque that it becomes, practically speaking, incapable of use," or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."   *Id.* at 642-44; *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018). Plaintiff has not made any argument or presented any evidence suggesting administrative remedies were unavailable to him.   Accordingly, I conclude Defendant is entitled to summary judgment

because Plaintiff did not properly exhaust his available administrative remedies against him. *See Jones,* 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process.   The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson*, 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV.   PLAINTIFF'S MOTION TO AMEND

On June 8, 2023, Plaintiff filed a Motion seeking permission to file a Second Amended Complaint to add a new party.   (Doc. 19 at 1.)   But he does not say who that party is or how that individual allegedly violated his constitutional rights.   Instead, Plaintiff provides additional information about Defendant Page's alleged "state of mind during the time frame of Dec. 15, 22 Dec. 16 and forward."   (*Id*. at 3.)   Because Plaintiff did not properly exhaust his available administrative remedies before filing this lawsuit against Defendant Page, his Motion for Leave to Amend is denied.   *See Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008) (a court may deny a prisoner's motion to amend the complaint when such amendment would be futile).

8

## V.     CONCLUSION

IT IS, THEREFORE, ORDERED that:

1.      Defendant's Motion for Summary Judgment (Doc. 16) is GRANTED, Plaintiff's claim against Defendant Page is DISMISSED without prejudice, and this case is CLOSED.

2.      Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 19) is DENIED.

3.      It is certified, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Order and the accompanying Judgment would not be taken in good faith.

DATED this 27th day of June 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

9